IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

August 4, 1997

FOR PUBLICATION
Cecil Crowson, Jr.
Appellate Court Clerk
Filed: August 4, 1997

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | KNOX CRIMINAL |
| | ) | |
| | ) | |
| Vs. | ) | HON. MARY BETH LEIBOWITZ, |
| | ) | JUDGE |
| | ) | |
| JUBAL CARSON, | ) | |
| | ) | |
| Appellant. | ) | No.  03-S-01-9606-CR-00063 |

**For Appellant:**

Christopher Van Riper
Stuart & Van Riper
Clinton, Tennessee

**For Appellee:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Michael J. Fahey, II
Assistant Attorney General
Nashville, Tennessee

Randall E. Nichols
District Attorney General

Jo Helm
Leon Franks
Assistant District Attorneys General
Knoxville, Tennessee

# O P I N I O N

AFFIRMED.                                    ANDERSON, J.

The issue presented by this appeal is whether the defendant, who assisted his co-defendants in committing an aggravated robbery, was criminally responsible under Tenn. Code Ann. § 39-11-402(2) for additional offenses committed by them.

The defendant, who planned the store robbery, furnished guns and inside information to his co-defendants but waited in the car outside the store, was convicted of aggravated robbery, aggravated assault, and felony reckless endangerment.[1] The Court of Criminal Appeals affirmed the convictions, finding that the defendant was criminally responsible for the acts of his co-defendants.

After reviewing the applicable law and the evidence, we conclude that the defendant was criminally responsible for the acts of his co-defendants under Tenn. Code Ann. § 39-11-402(2) because, in our view, the common law rule (that a defendant who aids and abets a co-defendant in the commission of a criminal act is liable not only for that crime but also for any other crime committed by the co-defendant as a natural and probable consequence of the crime originally aided and abetted) is applicable under the statute. We therefore affirm the judgment of the Court of Criminal Appeals.

## BACKGROUND

The defendant, Jubal Carson, and two co-defendants, Aaron Gary and Alton Stover, met to discuss robbing "Jim and Dave's TV Repair" store in Knoxville, Tennessee. Carson, who had been in the store before, described the layout of the store to the co-defendants and told them that a large sum of money could be found in a drawer in a back room. Carson gave a handgun to each of

---

[1] The defendant, a Range III persistent offender, was sentenced to 30 years for the aggravated robbery, 15 years for each of the aggravated assaults, and 6 years for the reckless endangerment. The sentences for aggravated assault are to run concurrently; the sentences for the remaining offenses are to run consecutively, for an effective term of 51 years in the Department of Correction.

the co-defendants and the three men drove to the scene. While Carson waited in the car, Gary and Stover entered the store under the pretense of having repairs made to a portable stereo system.

Once inside the store, the co-defendants held two employees, James Adams and Dave McGaha, at gunpoint and forced them into a room in the rear of the building. Both employees were searched and $130 was taken from Adams. Adams and McGaha were ordered onto a couch while Gary and Stover searched the room. After binding Adams and McGaha with telephone cord, Gary and Stover closed the office door, told the victims not to attempt to free themselves, and then fired three shots through the office door, narrowly missing them. As they left the store, Gary and Stover were confronted by police officers. To their surprise, neither the car, nor the defendant Carson, was in the parking lot. Gary and Stover fled from the scene on foot, exchanging gunfire with officers. All three men were later found and arrested.

The lightning quick police response to the robbery was apparent later. Carson and his co-defendants did not realize that "Jim and Dave's TV Repair" store was an undercover sting operation run by the Knoxville Police Department. Unbeknownst to them, the co-defendants' actions were monitored by police officers and recorded on video tape located in the store.

The defendant Carson was charged, along with his co-defendants Gary and Stover. The co-defendants pled guilty and testified at trial against the defendant.[2] Carson did not testify; however, he made a statement to police admitting that he drove the co-defendants to the scene but denying that he knew a robbery would occur. He said he believed the co-defendants were going to the

---

[2] Gary pled guilty to attempted first-degree murder and was sentenced to 23 years. Stover pled guilty to aggravated kidnapping and was sentenced to 21 years.

store to sell the guns and that he was across the street from the store at a Hardee's restaurant when he heard shots being fired.

The jury found the defendant Carson guilty of aggravated robbery, aggravated assault against Adams, aggravated assault against McGaha, and felony reckless endangerment.[3] The Court of Criminal Appeals affirmed.

The defendant argues on appeal that the evidence was insufficient to sustain the convictions because he lacked the culpable mental state for the offenses committed by Gary and Stover. The State insists that the defendant was criminally responsible for the aggravated robbery, as well as the additional offenses, because they were a natural and probable consequence of the robbery.

We granted this appeal to determine the scope of criminal responsibility for the acts of another under Tenn. Code Ann. §§ 39-11-401 and -402.

## CRIMINAL RESPONSIBILITY

As part of the Criminal Sentencing Reform Act of 1989, the Legislature determined that "a person is criminally responsible as a party to an offense if the offense is committed . . . by the conduct of another for which the person is criminally responsible," and that a person is criminally responsible for an offense committed by another if "acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense. . . ." Tenn. Code Ann. §§ 39-11-402 and -402(2)(1991).

---

[3] The jury also convicted the defendant of aggravated kidnapping, which the trial court set aside post-trial under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991).

The Sentencing Commission comments to Tenn. Code Ann. § 39-11-401 explain that the statute

> is a restatement of the principles of Tennessee common law which provide equal criminal liability for principals, accessories before the fact, and aiders and abettors. The revised code does not utilize these terms; instead, it provides that any person may be charged as a party if he or she is criminally responsible for the perpetration of the offense.

(Emphasis added). Similarly, the Commission comments to Tenn. Code Ann. § 39-11-402(2) indicate that this portion of the statute sets forth the conduct of defendants formerly known as accessories before the fact and aiders and abettors.

The Criminal Sentencing Reform Act of 1989 also provides that the foregoing statutes "be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." See Tenn. Code Ann. § 39-11-104. The Sentencing Commission comments to the statute explain the legislative intent as follows:

> The commission intends the language of the sections themselves to be an authoritative statement of the law. Since some of the terms utilized have been clearly defined by judicial decisions, those decisions and common law interpretations should be consulted where necessary. . . .The comments in this code are intended to explain its provisions and to aid in their interpretation.

Accordingly, it is evident that Tenn. Code Ann. § 39-11-402(2), which states that one may be criminally responsible if he or she "solicits, directs, aids or attempts to aid another person to commit [an] offense," is derived from common law. An aider and abettor, for instance (sometimes referred to as a principal in the second degree), was one who advised, counseled, procured, or encouraged the principal to commit the offense and was present at the scene of the crime.

Flippen v. State, 211 Tenn. 507, 365 S.W.2d 895 (1963). The common law requirement that the defendant be present at the scene included "constructive" presence, which

> does not require a strict, actual, immediate presence, such a presence as would make him an eye or ear witness of what occurs, for if the abettor, at the time of the commission of the crime, were assenting to it, and in a situation where he might render some aid to the perpetrator, ready to give it if necessary, according to an appointment or agreement with him for that purpose, he would, in the judgment of the law, be present and aiding in the commission of the crime. . . .

Cavert v. State, 158 Tenn. 531, 14 S.W.2d 735, 738 (1929).

Criminal responsibility for another under Tenn. Code Ann. § 39-11-402(2) also requires that a defendant act with a culpable mental state, specifically, the "intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense." A person acts with intent as to the nature or result of conduct when it is that person's conscious objective or desire to engage in the conduct or cause the result. Tenn. Code Ann. § 39-11-302(a)(1991); see also State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994). This statutory language is also similar to common law:

> In order to aid and abet another to commit a crime, it is necessary that [the] accused in some sort associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree; the same criminal intent must exist in the minds of both.

See Jenkins v. State, 509 S.W.2d 240, 245 (Tenn. Crim. App. 1974). In other words, under common law, a defendant "must knowingly, voluntarily, and with common intent unite with the principal offenders in the commission of the crime." State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988).

Although not specifically addressed in the statute, the scope of criminal responsibility for accessories before the fact and aiders and abettors under the

-6-

common law was addressed by this Court in Key v. State, 563 S.W.2d 184, 186 (Tenn. 1978). The Key court stated the general common law rule as follows:

> The common purpose need not be to commit the particular crime which is committed; if two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal, if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose, or as a natural or probable consequence thereof.

(Emphasis added).

This common law principle was illustrated in the later Tennessee case of State v. Grooms, 653 S.W.2d 271 (Tenn. Crim. App. 1983). The female defendant and two armed co-defendants carried out the robbery of a pharmacy by forcing employees and customers into a back room, where they bound and robbed them. During the robbery, two additional customers entered the store who were shot by a co-defendant. As the defendant and co-defendants fled the scene, one of the co-defendants fired shots at the pursuing officers. The defendant was convicted of armed robbery, assault, and assault with intent to murder. In affirming the convictions, the Court of Criminal Appeals said:

> The crimes of which defendant says that she had no intent, were all committed as a part of the common purpose of committing these robberies at the drugstore and effecting an escape. Although she may not have had the particular intent to commit some of these offenses, they were natural and probable consequences of the common purposes of robbery with firearms.

Id., at 275 (emphasis added).

The "natural and probable consequence" rule has been widely accepted and applied by other jurisdictions.[4] It is based on the recognition that "aiders and

---

[4] See e.g., United States v. Andrews, 75 F.3d 552, 556 (9th Cir.), cert. denied, 116 S.Ct. 1890, 135 L.Ed.2d 183 (1996); United States v. Powell, 929 F.2d 724, 726 (D.C. Cir. 1991); Roy v. United States, 652 A.2d 1098, 1105 (D.C. App. 1995); State v. Trackwell, 458 N.W.2d 181, 184 (Neb. 1990); Sheppard v. State, 538 A.2d 773, 774 (Md. 1988); State v. Linscott, 520 A.2d 1067, 1069 (Me. 1987); State v. Marchesano, 783 P.2d 247, 253 (Ariz. App. 1989); Karlos v. State, 476

abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion."

The California Supreme Court has expressed it this way: "[A] person who aids and abets a confederate in the commission of a criminal act is liable not only for that crime (the target crime), but also for any other offense (nontarget crime) committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted." The rule frequently has been applied to offenses that are a natural and probable consequence of a planned armed robbery. People v. Prettyman, 926 P.2d 1013,1015, 1019, 1021 (Cal. 1996); see also State v. Grooms, 653 S.W.2d at 275; State v. Marchesano, 783 P.2d at 253; Sheppard v. State, 538 A.2d at 775.[5] A "'natural and probable consequence' in the 'ordinary course of things' presupposes an outcome within a reasonably predictable range." Roy v. United States, 652 A.2d 1098, 1105 (D.C. App. 1995).

We recognize, as have other courts, that the common law rule has been subject to criticism by some commentators, primarily for being too broad. See LaFave & Scott, Substantive Criminal Law, § 6.8(b), p. 158 (1987 & Supp. 1996); Mod. Pen. Code § 2.06 (1985). It continues, however, to be applied by the majority of courts under a variety of statutes governing criminal responsibility, and a number have observed that the doctrine is an established rule of American jurisprudence. Moreover, we note that many states have codified the common

---

N.E.2d 819, 822 (Ind. 1985); State v. Ivy, 350 N.W.2d 622, 628 (Wis. 1984); People v. Kessler, 315 N.E.2d 29, 32 (Ill.), cert. denied, 419 U.S. 1054 (1974).

[5] The principle also has been applied to accomplices under the felony murder doctrine: "A defendant who is a willing and active participant in a robbery becomes accountable for all of the consequences flowing from the robbery and may be convicted of first-degree murder where a co-perpetrator of the felony is the actual killer." State v. Middlebrooks, 840 S.W.2d 317, 336 (Tenn. 1992); Dupes v. State, 209 Tenn. 506, 512, 354 S.W.2d 453, 456 (1962).

law rule.[6]  In our view, the rule continues to be a viable principle underlying criminal responsibility.

As we have frequently observed, the Legislature is presumed to know the existing state of the law when it enacts a statute.  Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995).  Moreover, the Legislature has said that statutes must "be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations. . . ."  Tenn. Code Ann. § 39-11-104.

In our view, the Sentencing Commission comments to Tenn. Code Ann. §§ 39-11-401 and -402 clearly indicate the legislative intent that the statutory provisions embrace the common law principles governing aiders and abettors and accessories before the fact.  The statutory predecessors to these provisions likewise embraced the common law definitions.  See Tenn. Code Ann. § 39-1-301 (1982)("any person who shall feloniously move, incite, counsel, hire, command, or procure any other person to commit a felony is an accessory before the fact."); Tenn. Code Ann. § 39-1-303 (1982)("all persons present, aiding and abetting, or ready and consenting to aid and abet, in any criminal offense, shall be deemed principal offenders and punished as such."). Accordingly, we conclude that the natural and probable consequence rule, which derives from the common law and has been applied in our case law, as well as in the case law of a majority of jurisdictions, is applicable under Tenn. Code Ann. §§ 39-11-401 and -402.

Applying the foregoing principles to the present case, we have determined that the evidence was sufficient for the jury to find that the defendant aided and

---

[6] See Iowa Code Ann. § 703.2; Kan. Stat. Ann. § 21-3205(2); Me. Rev. Stat. Ann. tit. 17-A, § 57; Minn. Stat. Ann. § 609.05; Wis. Stat. Ann. § 939.05.

assisted in the offense of aggravated robbery, which requires evidence of an intentional theft from the person of another by violence and by placing the victims in fear with the use of a deadly weapon. Tenn. Code Ann. §§ 39-13-401(a) and -402(a)(1). The defendant planned the robbery, described the layout of the store, supplied weapons, and accompanied the co-defendants to the scene, where he was to wait in the car. The co-defendants entered the store, held the victims at gunpoint, and took money. Accordingly, there was sufficient evidence from which the jury could find that the defendant solicited and aided in the offense with the intent to promote and benefit from its commission.

Likewise, we conclude that the evidence was sufficient to find that the defendant was criminally responsible for the aggravated assaults committed against the victims inside the store and the reckless endangerment committed when the co-defendants fled from the scene.[7] The defendant initiated the robbery, supplied weapons, and was present at or near the scene of the offense. The aggravated assaults and the reckless endangerment were committed by the co-defendants with the weapons supplied by the defendant and in furtherance of the robbery. The offenses were the natural and probable consequence of the robbery that was initiated, directed, and aided by the defendant. Accordingly, we conclude that the evidence was sufficient to sustain these convictions under Tenn. Code Ann. § 39-11-402(2).

## CONCLUSION

We conclude that the natural and probable consequence rule which derives from the common law is applicable under Tenn. Code Ann. §§ 39-11-401

---

[7] The aggravated assault against Adams required an intentional or knowing act causing the victim to reasonably fear imminent bodily injury, as well as the use or display of a deadly weapon. Tenn. Code Ann. §§ 39-13-101(a)(2) & -102(a)(1)(B). The aggravated assault against McGaha required an intentional, knowing or reckless act causing bodily injury to the victim, as well as the use or display of a deadly weapon. Tenn. Code Ann. §§ 39-13-101(a)(1) & -102(a)(1)(B). The felony reckless endangerment required reckless conduct that placed another person in imminent danger of death or serious bodily injury, and the use of a deadly weapon. Tenn. Code Ann. § 39-13-103(a) & (b).

and -402, and that the evidence was sufficient to find that the defendant, having directed and aided in the aggravated robbery with the intent to promote or benefit from its commission, was criminally responsible for all of the offenses committed by his co-defendants, to wit: aggravated assault and felony reckless endangerment.

Accordingly, the judgment of the Court of Criminal Appeals is affirmed. The costs of this appeal are taxed to the defendant-appellant, Jubal Carson.

_____
RILEY ANDERSON, JUSTICE


CONCUR:

Birch, C.J.
Drowota, Reid, and Holder, JJ.