IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs, July 11, 2001

## STATE OF TENNESSEE v. HAROLD J. DOUGLAS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-04900     Joseph B. Dailey, Judge**

---

### No. W2000-01090-CCA-R3-CD  - Filed August 13, 2001

---

The Appellant, Harold J. Douglas, was indicted by a Shelby County Grand jury on one count of second degree murder.  Following a jury trial, Douglas was convicted of voluntary manslaughter and was sentenced to fourteen years in the Department of Correction.  On appeal, Douglas raises one issue for our review: Whether the evidence presented at trial was sufficient to find him guilty of voluntary manslaughter.  Finding the evidence legally sufficient to support the verdict, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Bill Anderson, Jr., Memphis, Tennessee, for the Appellant, Harold J. Douglas.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Angele M. Gregory, Assistant Attorney General; and Jennifer Nichols, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

On the night of June 2, 1997, the victim, Johnny Wilson, approached the Appellant and asked if he knew where he could purchase crack cocaine.  The Appellant agreed to help.  The Appellant got into the victim's truck and after driving a short distance, the two encountered Darrell Watkins, who joined them.  Although Watkins and the Appellant had known each other for twenty years, neither was familiar with the victim.  The Appellant told Watkins that he and the victim were going to purchase drugs from a man known locally as Jarvis.  Watkins knew Jarvis as they lived across the street from each other.

Jarvis refused to sell any drugs to the Appellant. Watkins, however, approached Jarvis and was able to obtain approximately eighty dollars worth of crack cocaine for the victim. Watkins then delivered the cocaine to the victim who had remained in his truck. At this point, the victim had not paid Watkins for the cocaine. Immediately upon receiving the cocaine, the victim drove away, hitting the curb and some hedges. Watkins knew the victim would have to drive by them again, as the victim had driven down a dead end street in his get away attempt. Watkins also knew the victim's escape would be slowed due to tire damage sustained as a result of hitting the curb.

Watkins offered a passing motorist four dollars to help him and the Appellant locate the victim. A short time later, the Appellant and Watkins spotted the victim at an Amoco service station lot where he was attempting to change a flat tire. Before encountering the victim, the Appellant first approached a friend, Marion Ross, at the station and asked him for money. Ross stated that he had none and noticed a "tire iron" sticking out of the Appellant's pants. The Appellant told Ross that "he was going to take care of his business" and then proceeded to walk around the station to where the victim's truck was parked. Ross saw the Appellant on the passenger side of the truck holding a tire iron, Watkins on the driver's side of the truck, and the victim inside the cab. Ross heard the victim screaming for help as the Appellant told the victim to "Drop it off. Get out. Drop it off." Ross saw the Appellant take the tire iron and hit at the victim in the truck. A few minutes later, Ross saw the bleeding victim in front of the Amoco trying to get inside. When Ross asked the victim if he could breathe and if he was about to die, the victim did not respond.

Marquita Phillips, the thirteen-year-old aunt of Marion Ross, was a passenger in Ross' vehicle at the Amoco station. Phillips testified that she also heard the Appellant tell Ross that "he was about to take care of business" and proceed around the building to the victim's truck. Phillips saw the Appellant take a "toolbar" from the bed of the truck and try to "stick it" in the victim who was sitting in the cab.

Nautia Taylor, Ross's sister, was also present in Ross' vehicle. She testified that she heard the Appellant tell Ross that "he had to take care of some business" and heard a "white guy's voice [Wilson]" screaming for help. Taylor stated that she later saw the Appellant run from the scene with "something black" in his hand.

The co-defendant, Watkins, who had previously pled guilty to second degree murder for his involvement in the death of the victim, was called as a witness by the State. Watkins acknowledged that he and the Appellant encountered the victim at the Amoco station. He testified that he approached the victim, who was seated in his truck, from the driver's side while the Appellant remained at the passenger's side door with a "crowbar" in his hand. Watkins admitted to stabbing the victim three or four times with a knife and testified that he never saw the Appellant strike the victim with the crowbar.

Dr. O'Brian Cleary Smith, Shelby County Medical Examiner, performed the autopsy of the victim. He determined that the cause of death was multiple stab wounds. Dr. Smith testified that the victim had six primary stab wounds to his body. One was on the right side of the neck, one was

on the left front of the victim's chest, one was on the right side of the victim's chest, one was on the left biceps, one was below the top of the left shoulder, and one was on the left forearm. Dr. Smith testified that these wounds were made a by a knife or sharp instrument and that three of the wounds could have produced death in and of themselves. In addition to the wounds listed above, Dr. Smith noted additional bruises, scrapes and abrasions to the victim's body which were consistent with the use of a tire iron. The medical report further established that the victim had a high level of cocaine in his system.

## ANALYSIS

### Sufficiency of the Evidence

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this Court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally* State v. Adkins, 786 S.W.2d 642, 646 (Tenn. 1990); State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S. Ct. 743 (1995); Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993).

The Appellant argues that the evidence presented at trial is insufficient to support the verdict. Specifically, the argues that his "conviction is based on...a string of alleged eyewitness accounts that differ in so many specifics and degrees that, in total, they should all be disregarded." Moreover, the Appellant contends that the jury "either completely or almost completely disregarded the testimony of the co-defendant, Darrell Watkins . . . that he alone formed the intent to commit the murder." First we note, as with any witness, that the jury was not compelled to believe the co-defendant's version of the events of the homicide, even if uncontradicted. Again, we emphasize that our examination of the evidence is not equivalent to that of the jury. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. In sum, our inquiry is not upon the weight of the evidence or its inconsistency but, rather, whether there is proof of the crime beyond a reasonable doubt.

Voluntary manslaughter is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an

irrational manner." Tenn. Code Ann. § 39-13-211(a). To establish criminal responsibility for the conduct of another, the State must prove that the Appellant, "acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or result of the offense, ... solicit[ed], direct[ed], aid[ed] or attempt[ed] to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). In applying the provisions of Tenn. Code Ann. § 39-11-402(2), our supreme court held:

> In order to aid and abet another to commit a crime, it is necessary that [the] accused in some sort associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree; the same criminal intent must exist in the minds of both.

State v. Carson, 950 S.W.2d 951, 954 (Tenn. 1997).

In determining the scope of criminal responsibility for the conduct of another, the court, in Carson, applied the "natural and probable consequence" rule, holding:

> The common purpose need not be to commit the particular crime which is committed; if two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal, if the other commits that particular crime, *but he is also guilty of any other crime committed by the other in pursuance of the common purpose, or as a natural or probable consequence thereof.*

Carson at 954.

In the present case, the proof establishes that the Appellant associated himself with the venture and did aid and assist his co-defendant at all times during the commission of the homicide. Despite the Appellant's claim that trial testimony was inconsistent, we find little contradictory eyewitness accounts. The testimony at trial revealed that the Appellant had been involved in a drug deal where the victim left without paying for the cocaine. The Appellant and Watkins immediately pursued the victim and found him at an Amoco station changing a flat tire. Witnesses testified that the Appellant displayed what appeared to be a tire iron or crowbar and said that "he had to take care of his business." The Appellant went to the victim's truck where he yelled for the victim to "drop it" and "get out." The Appellant stood by the passenger's side door and prevented the victim from exiting the victim. Moreover, Ross and Phillips testified that they saw the Appellant hitting at the victim with the tire iron. The Appellant clearly acted with the intent to assist Watkins in the victim's murder and did, in fact, succeed in helping murder the victim. We, therefore, conclude that the elements of criminal responsibility for voluntary manslaughter have been established beyond a reasonable doubt. This issue is without merit.

**CONCLUSION**

After review, we find the evidence sufficient to support the jury verdict of voluntary manslaughter. Thus, the judgment of the Shelby County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE