# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 21, 2001

## STATE OF TENNESSEE v. MELVIN WATERS

### Direct Appeal from the Criminal Court for Davidson County
### No. 2000-A-18    Steve R. Dozier, Judge

_____

### No. M2000-03224-CCA-R3-CD - Filed December 5, 2001

_____

The defendant appeals from his convictions for facilitation of aggravated robbery, aggravated assault, resisting arrest and criminal impersonation.  The only issue raised by the defendant is whether the evidence was sufficient to support his conviction for aggravated assault.  Based on our review of the evidence, we conclude that the co-defendant's conduct amounted to aggravated assault and that the defendant, as a party to the offense, was criminally responsible for that conduct.  The judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Daniel L. McMurtry, Nashville, Tennessee, for the appellant, Melvin Waters.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Brian K. Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Melvin Waters, was indicted for the aggravated robbery of Dalton Pitts, Count One; the aggravated assault of Fatima Jones, Count Two; disorderly conduct, Count Three; resisting arrest, Count Four; and criminal impersonation, Count Five.  A co-defendant, Quawn Lillard, was also named in the indictment for Counts One and Two.

The defendant was tried by a jury and found guilty of the lesser included offense of facilitation of aggravated robbery on Count One, not guilty of Count Three and guilty as charged in the indictments on Counts Two, Four and Five.  The defendant is a Range II multiple offender. The trial court sentenced the defendant to twelve (12) years for the facilitation of aggravated robbery conviction, six (6) years for the aggravated assault conviction, and six (6)

months each for the resisting arrest and criminal impersonation convictions. The trial court ordered the sentences to be served concurrently.

The trial court denied the defendant's timely motion for judgment of acquittal and motion for a new trial and a timely notice of appeal followed. The defendant raises a single issue on appeal: whether there was sufficient evidence to support his conviction for the aggravated assault of Fatima Jones, Count Two.

**Facts**

The defendant and a co-defendant were tried jointly for the aggravated robbery of Dalton Pitts and the aggravated assault of Fatima Jones based on events that occurred in August of 1999. Both Mr. Pitts and Ms. Jones, the victim, testified at the trial. Mr. Pitts was at the victim's home on the evening of August 20, 1999. Early in the evening, Mr. Pitts told the victim that he needed change for a one-hundred-dollar bill in order to pay for bus fare to work in the morning. The victim left the house to get change for Mr. Pitts but returned without success because the store was closed. Later, the victim and Mr. Pitts were in her bedroom and she was lying on her bed. Mr. Pitts was sitting on the bed playing video games when the defendant and the co-defendant entered the bedroom. The co-defendant asked if Mr. Pitts wanted to go to the store with him and the defendant to get change. Mr. Pitts declined to go to the store with the defendant and the co-defendant because he did not know them.

A short time later, the defendant and the co-defendant returned to the victim's bedroom. Mr. Pitts noticed that the defendant had a sawed off shotgun in his pants. The co-defendant demanded that Mr. Pitts give him money. Mr. Pitts refused the co-defendant's repeated requests for money at which point the co-defendant asked the defendant to give him the gun. The defendant gave the gun to the co-defendant and the co-defendant asked once again for Mr. Pitt's money. Mr. Pitts refused and the co-defendant fired the shotgun into the mattress of the bed. Mr. Pitts then gave the co-defendant the one-hundred-dollar bill in his pocket. The co-defendant handed the money to the defendant and the two men left. Both men ran out of the house, nearly knocking down the victim's mother as they left.

The victim's perception of the events differed slightly from that of Mr. Pitts. She testified that she was lying on her bed while Mr. Pitts played video games. She noticed that someone entered the room but was not concerned when she saw that it was the co-defendant because she knew him. At first the victim did not pay attention to the conversation between Mr. Pitts and the two defendants. Upon hearing the co-defendant say, "give me your money" and "I'm not playing with you," the victim turned to look at the co-defendant and the defendant. The victim saw the co-defendant pull out a gun and hold it pointing toward the floor. Scared that the co-defendant was going to shoot, the victim jumped from the bed and ran out of the bedroom. The victim heard a gunshot after she went outside the house to tell her mother what was happening inside. The victim testified that she never saw the defendant with a gun, nor did she hear him say anything in her presence. She did, however, observe the defendant run from the home with the co-defendant.

The victim's mother reported the incident to the police. When the police arrived at the scene, the co-defendant's sister made a statement to police, which implicated the co-defendant. In addition, the victim identified both the defendant and the co-defendant from a photographic lineup. Mr. Pitts only identified the defendant from the photographic lineup. Mr. Pitts explained during his trial testimony that the co-defendant was bald on the night of the crime but had hair in the photograph, which was why he was not able to identify the co-defendant from the photographic lineup. The defendant and the co-defendant were both charged with the aggravated robbery of Mr. Pitts and the aggravated assault of the victim.

## Analysis

The defendant contends that the evidence was insufficient to support his conviction for the aggravated assault of Fatima Jones. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 322-25, 99 S. Ct. 2781 (1979), 61 L. Ed. 2d 560. Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This court may not substitute its own inferences for those drawn by the trier of fact from circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the jury verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant claims that the evidence adduced at trial is insufficient to support his conviction for aggravated assault because the victim's testimony did not indicate that the defendant's conduct caused her to fear imminent bodily injury. We disagree. The victim testified that she was lying on her bed when the defendant and the co-defendant entered her bedroom. She testified that her boyfriend was also in the room and that he was sitting on the bed playing a video game. The victim stated that when she first noticed the co-defendant she was not concerned because she knew him. The victim did become concerned, however, when she heard the co-defendant yell to her boyfriend, "Give me your money!" At this point the victim turned to look in the direction of the defendant and the co-defendant, and saw the co-defendant pull out a gun. The victim testified that she immediately jumped up and ran from the room because she was scared that they would shoot.

In order to support a conviction for aggravated assault the state must prove that the defendant committed a knowing or intentional assault, as defined in Tennessee Code Annotated section 39-13-101, and caused serious bodily injury or used or displayed a deadly weapon. Tenn.

Code Ann. § 39-13-102(a)(1)(A)-(B). A person commits an assault if he intentionally or knowingly causes bodily injury or causes another to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-101(a)(1) - (2).  A person acts intentionally "with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a).  One acts knowingly when "with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

According to the indictment, the defendant and his co-defendant "intentionally or knowingly did cause Fatima Y. Jones to reasonably fear imminent bodily injury . . . and did use or display a deadly weapon, to-wit: a short-barrel shotgun, in violation of Tennessee Code Annotated 39-13-102."

Viewing the victim's testimony in the light most favorable to the state, we conclude that it was sufficient to establish the elements of aggravated assault and support the jury's finding of guilt beyond a reasonable doubt.  The victim's testimony that she ran from the room because she was afraid that the co-defendant would shoot supports a finding that she was in fear of imminent bodily injury.   Additionally, the victim testified that the co-defendant displayed a deadly weapon, which established that the assault was aggravated.

With respect to whether the defendant's conduct constituted aggravated assault of Ms. Jones, the state points out that the defendant, as a party to the offense, is criminally responsible for the conduct of the co-defendant.  We agree. A defendant may be found criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [he] solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (1997).  Thus, "'it is necessary that [the] accused in some sort associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree; the same criminal intent must exist in the minds of both.'"  State v. Carson, 950 S.W.2d 951, 954 (Tenn. 1997) (quoting Jenkins v. State, 509 S.W.2d 240, 245 (Tenn. Crim. App. 1974)).

Although a defendant's mere presence during the commission of a crime will not render him criminally responsible for the conduct of another, "[n]o particular act [by the defendant] need be shown." State v. Jones, 15 S.W.3d 880, 890 (Tenn. Crim. App. 1999).  That is to say, it is not necessary that the defendant took physical part in the crime; "[e]ncouragement of the principal is sufficient."  Id.  Moreover, "[p]resence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which one's participation in the crime may be inferred." State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998).

The evidence in the instant case was sufficient for the jury to find that the defendant was criminally responsible for the conduct of the co-defendant.  According to the victim's testimony, the defendant and the co-defendant entered her bedroom together.   The victim testified that the defendant stood beside the co-defendant while he demanded money from her boyfriend and

-4-

while he displayed the gun.  The defendant remained with the co-defendant after the victim ran from the room.  Additionally, the victim testified that the defendant and the co-defendant ran out of the house together, ran down a hill, and "disappeared in the dark."  Furthermore, the victim's boyfriend, Dalton Pitts, testified that the defendant, and not the co-defendant, was the person who entered the room with the gun in his pants.  Mr. Pitts testified that the co-defendant asked for his money.  When Mr. Pitts refused to give it to him, the co-defendant asked the defendant for the gun.  Mr. Pitts testified that the defendant complied and remained with the co-defendant while he fired the gun into the mattress beside Mr. Pitts and then took his money.  Mr. Pitts also testified that the co-defendant handed the money to the defendant and they both ran from the room and out of the house.

We conclude that the evidence was sufficient to support the conviction for the aggravated assault of Ms. Jones.  It is evident from the testimony of Ms. Jones and Mr. Pitts that the defendant was acting in concert with the co-defendant and thus is criminally responsible for the conduct of the co-defendant.  Accordingly, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE