IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2016

**STATE OF TENNESSEE v. TIMOTHY JOHN MCKNIGHT, JR.**

**Appeal from the Criminal Court for Davidson County**
**No. 2007-C-2153    Mark J. Fishburn, Judge**

_____

**No. M2015-02306-CCA-R3-CD – Filed September 19, 2016**

_____

Defendant, Timothy John McKnight, Jr., appeals from his conviction of aggravated robbery, arguing that the evidence is insufficient and that the trial court abused its discretion by improperly limiting cross-examination of two witnesses.  After carefully reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Joshua L. Brand (on appeal) and Dana Nero (at trial), Nashville, Tennessee, for the appellant, Timothy John McKnight, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General, Senior Counsel; Glenn R. Funk, District Attorney General; and Rob McGuire and Janice Norman, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*I. Procedural History*

Over nine years ago, Defendant and Melvin Jackson, Jr., were indicted on one count of aggravated robbery and one count of attempted aggravated robbery.  The trials of each co-defendant were severed.  Defendant was found guilty of aggravated robbery and sentenced to eight years as a standard offender.  Defendant was acquitted of attempted aggravated robbery.

In December of 2009, Defendant filed a pro se petition for post-conviction relief. With the assistance of appointed counsel, Defendant filed an amended petition for post-conviction relief alleging, among other things, that trial counsel was ineffective for failing to file a motion for new trial and notice of appeal. On January 29, 2015, the post-conviction court granted Defendant an opportunity to file a delayed motion for new trial and subsequent appeal and stayed the post-conviction proceedings until the resolution of the delayed appeal.

Defendant then timely filed a motion for new trial, which was denied. Defendant then timely filed a notice of appeal, which is now before this Court. Defendant argues that the evidence was insufficient to support his conviction and that the trial court erred by limiting trial counsel's cross-examination of two witnesses.

## II. Factual Summary

At trial, the proof established that the alleged victims, Shelly Buskell and Samir Mikhael, were employees of Jack's Discount Tobacco in Madison. On January 26, 2007, the victims were working together at the store. Around 9:00 p.m., Ms. Buskell began sweeping the parking lot outside the front of the store when a man approached her from behind the dumpster behind the store. The man asked if Ms. Buskell worked at the store, to which she responded that she did. The man revealed a gun and pointed it toward her waist. The man declared that he was robbing the store and pulled a bandana over his mouth and chin. Ms. Buskell "took off running" back inside to her cash register because she was "terrified." Ms. Buskell recognized the man as a regular customer, but she did not know his name.

When Ms. Buskell re-entered the store, Defendant was standing at Mr. Mikhael's register purchasing cigarettes. Defendant was already inside the store before Ms. Buskell went outside to sweep. There were no other customers inside the store. Ms. Buskell recognized Defendant because she had seen him and the gunman together inside the store on previous occasions. Mr. Mikhael had also seen the two men together inside the store on previous occasions.

Ms. Buskell informed Mr. Mikhael that the gunman was robbing the store and told Mr. Mikhael to turn over the money. Ms. Buskell retrieved the money from her cash register and gave it to the gunman, who appeared nervous. The gunman then pointed the gun at Mr. Mikhael and reached into his cash register. After taking the money from the cash register, the gunman left the store.

Ms. Buskell testified that, after she emptied her register, she did not notice the conduct of Defendant because she was paying attention to the gun. Ms. Buskell testified

that she did not observe any conduct from Defendant that suggested he was acting concertedly with the gunman. Mr. Mikhael, however, testified that Defendant stood near the door and "waited as a guard" while the gunman took the money from Mr. Mikhael's cash register. Defendant then held the door open for the gunman, and the two men left the store together. According to Mr. Mikhael, Defendant did not appear to be surprised or otherwise disturbed as the robbery transpired. However, Mr. Mikhael did not observe any other conduct from Defendant that suggested that they were acting concertedly.

After the robbery was complete, the victims locked the store and called the police. The victims identified Defendant as the man inside the store and Mr. Jackson as the gunman. Video surveillance footage from the store was played for the jury. It corroborated the testimony of the victims, showing that Defendant held the door while Mr. Jackson took the money from Mr. Mikhael's cash register. Defendant stopped holding the door and left the store about one or two seconds before Mr. Jackson left.

Detective Chris Steele interviewed Defendant, which was recorded and played for the jury. Defendant first told Detective Steele that he was not involved with the robbery and recounted that "someone came in and told him to hold the door, and while the store was being robbed, he ran off." Defendant denied knowing the gunman. When Detective Steele told Defendant about the surveillance footage, "he said that he was there just to hold the door so the guy could run in and out," but Defendant denied knowing the gunman or that a robbery was going to occur. Later in the interview, Defendant acknowledged that he knew the gunman and identified him as Mr. Jackson. However, Defendant maintained that he did not know that Mr. Jackson was going to rob the store.

Eventually, Defendant admitted to being involved with the robbery and described how he and Mr. Jackson planned to rob the store, which was located near Defendant's house, where the two men were recording music. Defendant explained to Detective Steele that "his role would be to make sure there were no customers inside, more or less a lookout, and also hold the door." Defendant acknowledged that the two men were going to split the money taken from the store, which was reported to be over $600.

When the police searched Defendant's house pursuant to a search warrant, they discovered cash, a gun, and some bandanas. The amount of money recovered did not match the amount taken from the store.

Mr. Jackson testified on behalf of Defendant and admitted that he had observed the store several times during the evening before the robbery and then planned the actual robbery with Defendant at Defendant's house. Defendant's role was to go inside the store first, purchase something, and then hold the door and look out for the police while Mr. Jackson robbed the store.

Defendant testified that he was seventeen years old and in the eleventh grade when he was arrested. On the day of the incident, Mr. Jackson and Defendant were socializing with another person at Defendant's house, which is near the store. Mr. Jackson informed Defendant that he intended to rob the store and offered to pay Defendant if he would allow Mr. Jackson to return to Defendant's house after he committed the robbery. Defendant agreed. Defendant saw what appeared to be a gun in Mr. Jackson's pocket.

Mr. Jackson then went to the store three different times but he never went through with the robbery. After the third trip, Mr. Jackson asked Defendant to come outside and they discussed Mr. Jackson's plan to rob the store. At this point, Defendant did not believe that Mr. Jackson was actually going to commit the robbery because he had already failed to do so on three occasions. Defendant thought that Mr. Jackson was simply acting "tough" by acting like he was going to rob the store.

After the discussion outside, the two men then walked to the store. Defendant went in first and was making a purchase when Ms. Buskell ran into the store followed by Mr. Jackson with a gun. Mr. Jackson pointed the gun at Defendant and told him to hold the door open. Defendant complied, but shortly thereafter, he decided to run home because he did not want to be involved. Defendant denied that he was involved in the robbery and denied that he knew Mr. Jackson was actually going to rob the store at this point.

*III. Analysis*

Defendant argues that the evidence is insufficient to establish that he was criminally responsible for Mr. Jackson's robbery of the store and that the trial court abused its discretion by limiting his cross-examination of two witnesses. The State disagrees.

A. Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role

of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). This standard of review applies whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Aggravated robbery is an "intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. §§ 39-13-401(a), -402(a)(1). Tennessee Code Annotated section 39-11-402(2) provides that a person is "criminally responsible for an offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." In *State v. Dickson*, 413 S.W.3d 735, 744 (Tenn. 2013), our supreme court explained:

> Criminal responsibility is not a separate crime, but "a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999). Criminal responsibility represents a legislative codification of the common law theories of aiding and abetting and accessories before the fact. *Id.* at 171 (citing *State v. Carson*, 950 S.W.2d 951, 955 (Tenn. 1997)). "No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible." *State v. Caldwell*, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002).

Accordingly, "defendants convicted under a theory of criminal responsibility are considered to be principal offenders, just as if they had committed the crime themselves." *State v. Sherman*, 266 S.W.3d 395, 408 (Tenn. 2008) (citing *State v. Carson*, 950 S.W.2d 951, 954 (Tenn. 1997)).

Relying on his own trial testimony, Defendant maintains that he did not know that the robbery was actually going to be committed and only participated when threatened

with a gun by Mr. Jackson. However, the evidence is sufficient to support Defendant's conviction under a theory of criminal responsibility, and the jury chose not to accredit the Defendant's version of what transpired, as was its prerogative.

Defendant gave a statement to the police in which he admitted that there was a preconceived plan to rob the store and that his role would be to hold the door and act as a lookout. Mr. Jackson confirmed this admission at trial. Although Defendant changed his story at trial, Defendant still acknowledged that he knew that Mr. Jackson possessed a gun, that Mr. Jackson had repeatedly reconnoitered the store on the same evening, and that Mr. Jackson told him that he was going to rob the store prior to doing so. The jury heard the testimony of the victims and saw the surveillance video footage of Defendant holding the door while Mr. Jackson plundered the cash register. From the evidence in the record, a rational jury easily could have concluded that Defendant was a willing participant in the robbery. Accordingly, the evidence is sufficient to support his conviction for aggravated robbery, and Defendant is not entitled to relief on this basis.

### B. Cross-examination

Defendant also argues that the trial court abused its discretion by limiting trial counsel's cross-examination of two witnesses. "[C]ross-examination is a fundamental right." *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995). "[A] denial of the right to an effective cross-examination is 'constitutional error of the first magnitude and amounts to a violation of the basic right to a fair trial.'" *Id.* (quoting *State v. Hill*, 598 S.W.2d 815, 819 (Tenn. Crim. App. 1980)). "The propriety, scope, manner, and control of cross-examination of witnesses, however, remain within the discretion of the trial court." *State v. Echols*, 382 S.W.3d 266, 285 (Tenn. 2012).

Defendant first claims that the trial court prevented trial counsel from thoroughly cross-examining Ms. Buskell because the trial court sustained a speculation objection prompted by trial counsel's question, "Did you see any way that [Defendant] helped the robbery or participated in the robbery?" However, the trial court did not err by sustaining this objection because, during her direct examination and during cross-examination prior to the objection, Ms. Buskell repeatedly stated that she either could not or did not see anything done by Defendant after she re-entered the store due to her focus on Mr. Jackson and his gun. Thus, trial counsel's question did call for speculation about Defendant's conduct because the witness had already clearly established that she did not observe Defendant's behavior at this point.

Defendant next claims that the trial court prevented trial counsel from thoroughly cross-examining the investigating officer when the trial court sustained an objection to a question about the number of juvenile offenders Detective Steele had previously interviewed. The trial court overruled a relevance objection but then said that the

question had already been asked and answered and instructed trial counsel to "move on." After reviewing the transcript, we cannot say that the trial court abused its discretion on this issue because Detective Steele had already testified that he had previous experience interviewing "a couple of hundred" juveniles, although he could not recall precisely how many. Defendant is not entitled to relief on this basis.

*Conclusion*

Based on the foregoing, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE