IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2021

FILED
10/12/2021
Clerk of the
Appellate Courts

## STATE OF TENNESSEE v. NICHOLAS MAURICE WHITE

**Appeal from the Criminal Court for Bradley County**
**No. 16-CR-245B    Sandra Donaghy, Judge**
_____

#### No. E2020-01546-CCA-R3-CD
_____

A Bradley County jury convicted the defendant, Nicholas Maurice White, of aggravated robbery and aggravated assault, and the trial court imposed an effective sentence of ten years' incarceration. On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions. Upon our review of the record and the applicable law, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Andrew J. Brown, Cleveland, Tennessee (on appeal) and D. Mitchell Bryant, Athens, Tennessee (at trial), for the appellant, Nicholas Maurice White.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Krista Oswalt and Dallas Scott, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

The defendant and a co-defendant, Charles Cecil Vaughn, were charged in a three-count indictment with the aggravated robbery of Richard Cole, attempted aggravated robbery of Steve Hicks, and attempted aggravated robbery of Jade Underwood. The State dismissed Count 3, and the case against the defendant proceeded to trial on the remaining counts.

The evidence at trial showed that on July 15, 2015, Richard Cole[1] asked his friend, Steve Hicks, to ride with him to take Jade Underwood to Cleveland, Tennessee, to meet her brother-in-law, the defendant. Mr. Cole picked up Mr. Hicks in his Ford pickup truck, and the group traveled to Cleveland with Mr. Cole driving, Ms. Underwood in the front passenger seat, and Mr. Hicks in the back seat.

When they arrived at the apartment complex where Ms. Underwood was to meet the defendant, Mr. Hicks observed the defendant and another male, later determined to be co-defendant Vaughn, standing in the parking lot, but he did not realize they were together. The defendant walked up to the truck and talked to Ms. Underwood through the window, but then he "jumped back and pulled a gun on [Mr. Cole], and said, don't move. I want your money." Mr. Hicks was scared, as he had "never been robbed like that before." Mr. Cole held up his hands and, seemingly out of nowhere, co-defendant Vaughn appeared on the driver's side of the truck armed with what appeared to be a gun of some kind. Co-defendant Vaughn held his gun against the driver's window right at Mr. Cole's head and slowly opened the door. Mr. Cole retrieved around $800 from his pocket and asked co-defendant Vaughn not to shoot him. Co-defendant Vaughn grabbed the money from Mr. Cole's hand and ran off. The defendant fired his gun in the air, told the group to leave the area, and ran away in a different direction than co-defendant Vaughn.

Ms. Underwood called 911 and reported the incident. The group left the area but later returned at a police officer's direction to give a report. Mr. Hicks recalled the group was "shook up" by the incident, elaborating "when that guy fired the shot it shook us both up pretty good. You know, I didn't really grasp the scope of it till he fired the weapon. It was in the nighttime, so it was loud and it shook us up." Mr. Hicks acknowledged he did not have anything taken from him, and neither offender touched him in any way.

Officer Eric Jones with the Cleveland Police Department was one of the officers who responded to the scene and searched the area for suspects. He received information from an individual leading him to a nearby location where he encountered the defendant, whom he identified as one of the suspects based on the description given by the victims. A pat down of the defendant uncovered $411 in cash, a bar of Xanax, and a small caliber revolver. The gun was loaded with the hammer cocked and contained five live rounds and one spent shell casing. Co-defendant Vaughn was arrested at the apartment next door to where the defendant was located. He had approximately $45 in his possession, and his weapon, an airsoft gun, was found on top of an entertainment cabinet inside the apartment. However, the airsoft gun was missing the usual orange tip at the end of the barrel to differentiate it as a fake weapon.

---

[1] Mr. Cole was deceased at the time of trial, having been the victim of a motor vehicle accident.

Detective Bill Parks with the Cleveland Police Department interviewed the defendant after his arrest. The defendant told Detective Parks the gun possessed by co-defendant Vaughn was a "BB or airsoft type gun." The defendant said co-defendant Vaughn gave him the real gun because Vaughn did not know how to use it. The defendant claimed he did not know what co-defendant Vaughn did with the money taken from Mr. Cole. He said that co-defendant Vaughn did not give him any of the stolen money and that the $411 found in his possession was money he had before the robbery.

Following the conclusion of the proof, the jury convicted the defendant as charged in Count 1 of aggravated robbery and of the lesser-included offense of aggravated assault in Count 2.

*Analysis*

The defendant argues the evidence is insufficient to sustain his conviction for aggravated robbery against Mr. Cole because there was no evidence he exercised control over Mr. Cole's property. He asserts the evidence is insufficient to sustain his conviction for aggravated assault against Mr. Hicks because the State failed to establish he intentionally or knowingly caused Mr. Hicks to reasonably fear imminent bodily injury.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

> atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

As charged in this case, aggravated robbery is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a).

The jury in this case received an instruction on criminal responsibility. "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or both." Tenn. Code Ann. § 39-11-401(a). Criminal responsibility for the actions of another arises when the defendant, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, . . . solicits, directs, aids, or attempts to aid another person to commit the offense[.]" *Id.* § 39-11-402(2). If convicted under the criminal responsibility theory, defendants are "considered to be principal offenders, just as if they had committed the crime themselves." *State v. Little*, 402 S.W.3d 202, 217 (Tenn. 2013) (citing *State v. Carson*, 950 S.W.2d 951, 954 (Tenn. 1997)).

With regard to the aggravated robbery conviction, the evidence, when viewed in the light most favorable to the State, shows that the defendant "pulled" a gun on Mr. Cole, ordered him not to move, and demanded his money. Co-defendant Vaughn then approached and pointed what appeared to be another deadly weapon at Mr. Cole's head. Mr. Cole asked co-defendant Vaughn not to shoot him and retrieved $800 from his pocket. Co-defendant Vaughn grabbed the money from Mr. Cole's hand and ran off. The defendant then fired his gun in the air, told the group to leave the area, and fled the scene. From this evidence, a jury could reasonably determine the defendant held Mr. Cole and the other passengers at gunpoint in order to aid or assist co-defendant Vaughn in the commission of the robbery. It was not necessary for the defendant to have personally exercised control over the property. Thus, the evidence is sufficient to sustain the jury's verdict.

With regard to the aggravated assault conviction, we note a defendant commits an assault when he "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). A defendant commits an aggravated assault when the assault "[i]nvolve[s] the use or display of a deadly weapon." *Id.* § 39-13-102(a)(1)(A)(iii).

In the light most favorable to the State, there was sufficient proof for the jury to find the defendant intentionally or knowingly caused Steve Hicks to reasonably fear imminent bodily injury. Mr. Hicks testified he was "scared" when the defendant pulled a gun on Mr. Cole and was "shook up" by the incident, particularly when the defendant fired his weapon. The defendant need not to have actually pointed his gun at Mr. Hicks. *See State v. Antonio Henderson and Marvin Dickerson*, No. W2015-00151-CCA-R3-CD, 2016 WL 3390627, at *8 (Tenn. Crim. App. June 10, 2016) (upholding aggravated assault conviction where the victim testified she was afraid and the defendant brandished a gun but never pointed it at the victim), *aff'd*, 531 S.W.3d 687 (Tenn. 2017). Moreover, even if Mr. Hicks had not testified as he did, the jury was entitled to infer his fear of imminent bodily injury. *See State v. Ricky Atkins*, No. 03CO1-9812-CC-00432, 1999 WL 1019029, at *3 (Tenn. Crim. App. Nov. 10, 1999), *perm. app. denied* (Tenn. Apr. 10, 2000) (holding the jury was entitled to infer fearfulness when the victim ran away from the defendant and called the police); *State v. Gregory Whitfield*, No. 02CO1-9706-CR-00226, 1998 WL 227776, at *2 (Tenn. Crim. App. May 8, 1998), *perm. app. denied* (Tenn. Dec. 7, 1998) ("The element of 'fear' is satisfied if the circumstances of the incident, within reason and common experience, are of such a nature as to cause a person to reasonably fear imminent bodily injury."). Furthermore, contrary to the defendant's assertion, Mr. Hicks' later willingness to return to the scene at the direction of the police does not negate evidence showing he feared imminent bodily injury during the defendant's display and use of a gun.

## *Conclusion*

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____

J. ROSS DYER, JUDGE