IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1997 SESSION

FILED

December 1, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01C01-9607-CR-00301 |
| | ) | |
| Appellee | ) | |
| | ) | DAVIDSON COUNTY |
| V. | ) | |
| | ) | HON. J. RANDALL WYATT, JR., |
| JOHNNY E. MCCLAIN, JR., | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Especially Aggravated Robbery; |
| | ) |  Facilitation of Attempted Murder; |
| | ) |  Aggravated Robbery; Aggravated |
| | ) |  Assault) |
| | ) | |

For the Appellant:

Mark E. Chapman
3608 Chesapeake Drive
Nashville, TN 37207
(At trial)

Lionel R. Barrett
Washington Square Two
222 Second Avenue, North
Suite 417
Nashville, TN 37201
(On appeal)

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Daryl J. Brand
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Victor S. Johnson, III
District Attorney General

Nicholas D. Bailey
Assistant District Attorney
222 Second Avenue, North
Suite 500
Nashville, TN 37201-1649

OPINION FILED: _____

AFFIRMED

William M. Barker, Judge

# OPINION

The appellant, Johnny E. McClain, Jr.,[1] appeals as of right his convictions in the Davidson County Criminal Court of especially aggravated robbery, aggravated robbery, facilitation of attempted first degree murder, and two counts of aggravated assault. As a Range II offender, the appellant received an effective sentence of seventy-five years in prison for his convictions. Finding no reversible error in the record on appeal, we affirm both the appellant's convictions and sentences.

Appellant raises three issues on appeal: (1) the sufficiency of the convicting evidence; (2) whether the trial court erred in excluding certain photographs; and (3) whether the trial court erred in sentencing the appellant.

The evidence at trial established that on August 1, 1994, while returning to their home in Scranton, Pennsylvania, from a vacation trip in Florida, James Walsh, his wife, Donna, and their two young sons, Eddie and Jimmy, stopped in Nashville to spend the night. They planned to visit Opryland theme park the following day and, accordingly, reserved a room at the Ramada Inn on Music Valley Drive near Opryland.

Upon arrival at the motel, Mr. Walsh parked his automobile near the front of the motel lobby and went in to register. Because there were a large number of other guests checking into the hotel, the check-in process for Mr. Walsh took approximately thirty to forty-five minutes. While Donna Walsh was waiting in the car while her husband and two sons went inside to register at the motel, she noticed three black men parked in a red car beside them. She testified that the three men stayed in their car the entire time, never going inside the motel.

After receiving his room key from the front desk of the Ramada Inn, Mr. Walsh drove his family to the rear of the building, parked his automobile, and began

[1]This appeal originally included appellant's co-defendant, Gary W. Stalworth, who was tried jointly with the appellant. However, the prosecution of his appeal was abated by his death on July 24, 1997. As a result, we will not address the issues raised on behalf of Mr. Stalworth.

unloading the family luggage. As he was closing the cartop luggage carrier, he noticed a black man approaching him. Because the man was a stranger, Mr. Walsh started to walk away, but the man said, "What's up?" The man continued walking toward Mr. Walsh. As he neared the front of the Walshs' automobile, the man raised his shirt and pulled out a handgun. He pointed it at Mr. Walsh and demanded his money.

By this time, Mrs. Walsh and the two boys had walked to the front of the car. Mr. Walsh pulled out his wallet and gave the man the money inside, which, according to Walsh, was either twenty-one dollars or forty-one dollars. The robber was angered by the small amount of cash and demanded more money, pointing the gun at Mrs. Walsh and the children. Mrs. Walsh removed a plastic money pouch containing all their vacation money from her purse and handed it to her husband. Mr. Walsh asked the gunman if he could keep a portion of the cash so that he and his family could make the return trip home. This angered the gunman even more. He demanded all the money and stated that he would kill Mr. Walsh if he did not comply. He then cocked the gun and pointed it at Mr. Walsh's family and said he was going to shoot.

In an effort to protect his family, Mr. Walsh lunged at the gunman. The robber pointed the gun in his face and Mr. Walsh pushed it away. As he did so, the gun fired and the bullet struck Mr. Walsh in his left shoulder. Walsh struck the gunman, knocking him to the pavement. They then struggled for the gun, which again fired, but the bullet missed both men. As the struggle continued, the gun fired again, the bullet passing very close to Mr. Walsh's ear, but again missing. Suddenly, the gunman pushed away from Mr. Walsh, jumped to his feet, and started to casually walk away. Mr. Walsh struggled to his feet, yelled at the man, and dove at the man's feet. At that point, the gunman began to run and Mr. Walsh, weakened by his injury, was unable to catch him. Nevertheless, the man turned and fired a fourth shot at Mr. Walsh, narrowly missing him. Walsh watched as the gunman ran toward another man standing about fifty yards away. Mr. Walsh yelled to the second man for help.

3

However, the second man joined the gunman and they both ran in the direction of the motel entrance. The two men jumped into a small red foreign car that was moving slowly toward them. Thereafter, the car began to speed away.

As the robbery and shooting were occurring, Patrick Hamblin, an off-duty Cheatham County Deputy, was across the street from the Ramada Inn at a convenience store. He heard the gunshots and witnessed two men struggling on the ground in the parking lot of the Ramada Inn. He quickly drove his pickup truck to the motel parking lot to offer assistance. He watched the scene closely as he drove on Music Valley Drive and saw one man jump up, begin to walk away, and then turn and fire a shot at the other man. He also observed the shooter run toward a small red car with a second man joining him approximately halfway between the place where the struggle had occurred and the red car. Hamblin reached the exit of the Ramada Inn parking lot at the same time the red car began to attempt to speed away. He drove his pickup truck so as to block the drive, almost hitting the red car. The red car stopped momentarily, and Hamblin yelled, "Police! Get out of the car."[2] The surprised driver of the red car stared at Hamblin for a moment and then pulled around Hamblin's truck and sped away.

Hamblin decided to give chase and followed the car as it sped down McGavock Pike. The chase lasted several miles, reaching speeds between 85 and 100 miles per hour. Hamblin testified that the driver of the red car ignored traffic lights, stop signs, and drove on the wrong side of the road. At one point during the chase, the person riding in the backseat of the red car reached out the window and fired a shot at Hamblin's truck. The red car eventually entered a housing project, at which point Hamblin got close enough to strike the red car with his pickup truck, causing the car to crash into a porch railing. The occupants jumped out of the car. The driver charged toward Hamblin's truck while Hamblin was still seated behind the wheel. Unable to

---

[2]Since he was off-duty, Mr. Hamblin was wearing civilian clothes and his badge was not visible.

4

see the man's hands as he came toward him, Hamblin armed himself with his personal firearm. As the man reached the window of the driver's side door, Hamblin fired a bullet into the man's chest. The man turned and ran.

Police arrived shortly and the injured driver of the car was discovered a few blocks away. He was identified as the appellant, Johnny E. McClain, Jr., and the red car he was driving was registered to his mother.

Mr. Walsh testified that the bullet which struck his shoulder remains lodged approximately on-half inch from his spine. Despite visits to several specialists, the bullet cannot be surgically removed because of its precarious location. As a result, he has been unable to resume his work as a firefighter in Pennsylvania.

The State also presented evidence demonstrating that several sets of appellant's fingerprints were found on the driver's door of the red car and that Mrs. Walsh's money pouch was discovered inside that car. The money, however, was not recovered.

The appellant offered no proof at trial.

Appellant first challenges the sufficiency of the convicting evidence . He does not dispute that he was present when the offenses were committed or that he drove the getaway car. Instead, he argues that the State failed to prove the necessary elements to make him criminally responsible for the actions of his co-defendants.[3] Appellant urges us to reverse his convictions because there is no evidence that he had knowledge of the crime prior to its commission and thus no intent to commit the crimes actually perpetrated by Wilkerson and Stalworth.

In order to convict the appellant under the theory of criminal responsibility, the State was required to prove beyond a reasonable doubt that the appellant solicited, directed, aided or attempted to aid another person to commit the offenses while

---

[3]Also indicted for these offenses in addition to the appellant and Gary W. Stalworth was Adrian Wilkerson. Wilkerson was granted a severance on the day of trial, but the appellant and Stalworth were tried jointly.

"acting with the intent to promote or assist the commission of the offense[s], or to benefit in the proceeds or results of the offense[s]." See Tenn. Code Ann. §39-11-402(2) (1991). This code provision is the codification of the common law for aiders and abettors. See Tenn. Code Ann. §39-11-402 Sentencing Commission Comments; State v. Carson, 950 S.W.2d 951, 953 (Tenn. 1997). Following our review of the record upon appeal, we conclude that the evidence more than sufficiently proved that the appellant acted with the intent to promote and assist the commission of the offenses and that he aided Stalworth and Wilkerson in the commission of the offenses.

Testimony at trial proved that the appellant and his co-defendants were seated in the small red car and parked beside the Walsh vehicle when Mr. Walsh went into the lobby of the Ramada Inn to register his family as guests. Both Mr. and Mrs. Walsh testified that they noticed the car and its three black male occupants. The car and its occupants remained parked beside the Walsh vehicle during the entire thirty to forty-five minute period in which it took Mr. Walsh to register at the motel. Mrs. Walsh was somewhat alarmed by their presence because the men remained in the car, did not move, and made no efforts to conduct business at the motel. It was reasonable for a jury to infer that the appellant and his companions were likely planning the robbery and choosing a target during this time. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978) (holding that the State is entitled to all reasonable and legitimate inferences which may be drawn from the proof).

Additional evidence of appellant's knowledge and intent to aid and abet was revealed by his actions during and following the offenses. Patrick Hamblin testified that he noticed the red car during the altercation between the actual robber and Mr. Walsh and saw the appellant standing at the rear of the vehicle watching. As the other two men began running, the appellant jumped in the car and started backing the car to the middle of the parking lot. Hamblin also testified that the appellant reached over, opened the passenger side door, and pushed the front seat down to allow one of

6

the men to get into the back seat. Testimony from other witnesses corroborated Mr. Hamblin's testimony that the small red car was already moving when the men reached it. Witness Ronald Warren testified that it appeared that the driver wanted to leave the men at one point, but did not. Mr. Warren confirmed that the appellant had the opportunity and ability to leave the two other men, but instead chose to wait for them. After allowing his two fleeing companions to enter the car which he was driving, the appellant sped from the scene and engaged in a high-speed chase. Such evidence does not paint the picture of one who is merely present and unaware that an offense was to be committed. Instead, the evidence, together with the reasonable inferences from that evidence, clearly demonstrate that the appellant "knowingly, voluntarily, and with common intent unite[d] with the principal offenders in the commission of the crime" and is, therefore, liable for their actions. State v. Carson, 950 S.W.2d 951, 954 (Tenn. 1997) (quoting State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)). Viewing the evidence in the light most favorable to the State, as we are required to do upon appeal, a reasonable jury could have determined that the appellant played an active role in the crime by acting as "wheelman" for his co-perpetrators, thereby aiding the commission of the offenses and acting with the intent to assist in the crimes. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Clearly, it was reasonable for the jury to conclude that appellant's role exceeded mere presence and that he associated himself with the venture and shared in the criminal intent of the perpetrators. See Carson, 950 S.W.2d at 954 (citation omitted).

Pursuant to Carson, our supreme court's most recent interpretation of the criminal responsibility statute, appellant's aiding and intent to assist in the robbery makes him liable for all natural and probable consequences flowing from that robbery. Id. at 955-56. Therefore, appellant's convictions for the aggravated assault of the

Walsh children and the facilitation of attempted murder of James Walsh were also warranted.[4]

The appellant next contends that the trial court erred in excluding photographs depicting a confederate flag license plate on the front of Deputy Hamblin's pickup truck. He argues that the pictures were relevant to show why he fled from Hamblin. Specifically, he contends that the photographs would have provided evidence of a reasonable explanation for three black men to flee from a white man dressed in civilian clothes giving chase in a truck bearing a confederate flag license plate. Such evidence, the appellant argues, would have presented the jury with a logical reason for his flight to rebut the inference of guilt.

Prior to trial, the State filed a motion in limine requesting the court to suppress the photographs and any evidence about the license plate. The trial court took the motion under advisement until it heard a portion of the evidence. Prior to Mr. Hamblin's testimony, however, the trial court ruled that the photographs would be excluded. In so ruling, the trial court stated that there was absolutely no evidence of bias in the record and there was no proof that either of the defendants even saw the licence plate. It found that under those facts and circumstances, the evidence was not relevant. The trial court further found that even if the photographs had some slight probative value, it was substantially outweighed by the "prejudicial and inflammatory effect this evidence would have before this jury."

The admissibility of photographic evidence rests within the sound discretion of the trial court. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). The admissibility of evidence, of course, hinges upon relevance and also a determination that the probative value of the evidence is not substantially outweighed by the danger of unfair

---

[4]Appellant's conviction for the lesser offense of criminal responsibility for facilitation of attempted first degree murder required proof of separate elements. Nevertheless, we believe the evidence was adequate to show that appellant knowingly furnished substantial assistance to his co-defendants while knowing that they intended to commit a specific felony. See Tenn. Code Ann. §39-11-403(a) (1991).

prejudice.  Id.; see also Tenn. R. Evid. 401, 403.  We are unable to say that the trial court abused its discretion in this case.

The record contains absolutely no evidence that any of the defendants were spurred on by fear associated by this license plate or that they were even aware of its presence.  Additionally, there was no evidence of any racial bias from any witness for the State.  This issue is without merit.

In his final issue, the appellant complains of the consecutive nature of his sentences.  In light of his role in the crime, he argues that the aggregate length of the sentences does not reasonably relate to the severity of the offenses and that the sentence imposed is not the least severe measure of punishment.

When a defendant complains of his or her sentence, we are required to conduct a *de novo* review accompanied by a presumption of correctness.  Tenn. Code Ann. §40-35-401(d) (1990).  The presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The burden of showing that the sentence is upon the appealing party.  Tenn. Code Ann. §40-35-401(d) Sentencing Commission Comments.

In this case, the trial court found three separate factors in support of consecutive sentencing: (1) the defendant is a professional criminal; (2) the defendant has an extensive record of criminal activity; and (4) the defendant is a dangerous offender.  See Tenn. Code Ann. §40-35-115 (1991). Because the record reflects that the trial court carefully considered the evidence offered at the sentencing hearing and the requisite principles of sentencing, the sentence imposed by the trial court is entitled to a presumption of correctness.

The record supports the trial court's determination that the appellant is a professional criminal.  Appellant's employment history was sketchy and could not be verified by the officer who prepared the presentence report.  Although the appellant

9

claimed to have worked at Krystal off and on for six years, the store had no records available for verification. From 1992 until his arrest for this offense, the appellant stated he was self-employed doing landscaping work. However, he did not provide the investigating officer any documentation, such as invoices to customers or receipts, to substantiate that employment. Appellant's lengthy criminal record is littered with theft and robbery offenses for the previous ten years, leading to an inference that he used the criminal activity as a major source of livelihood. Accordingly, the trial court did not err in holding that the appellant is a professional criminal.

The trial court further found that appellant had an extensive history of criminal activity. The presentence report reflects twelve convictions of the appellant during the previous ten-year period, including aggravated robbery, three convictions for robbery, marijuana possession, third degree burglary, possession of stolen property, and assault. Moreover, the appellant had been arrested for at least twenty-one other offenses spanning the same time frame. The trial court remarked that the appellant had been in and out of court "like a revolving door." Further, appellant admitted that there was only one calendar year since he turned eighteen in which he was neither arrested nor incarcerated. In addition, the instant offenses resulted in appellant's first trial; all of his previous sentences and convictions were the result of plea bargains. Many of the plea bargains resulted in guilty pleas for less serious offenses than those charged in the indictments. In sum, there was abundant evidence within the record to support the trial court's finding that the appellant has an extensive criminal record.

Finally, the trial court classified appellant as a dangerous offender, finding that he had little regard for human life. Appellant's behavior in voluntarily accompanying two other men, one of whom was armed, to a busy Ramada Inn at the height of the tourist season and participating in offenses during which many shots were fired and one man senselessly wounded demonstrates that the appellant had little regard for human life and no hesitation about committing a crime when the risk to human life was high. Moreover, we, as did the trial court, find that an extended sentence is necessary

10

to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offenses committed. State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995). Appellant's repeated and persistent violations of the laws of this state, including two parole violations, demonstrate that an extended sentence is necessary to protect the public from his future conduct. Each time the appellant has been confined and subsequently released, he has committed another crime almost immediately. The trial court did not err in imposing consecutive sentences.

Based upon the foregoing, we affirm both the appellant's convictions and his sentences.

_____
William M. Barker, Judge

_____
Joe B. Jones, Presiding Judge

_____
Thomas T. Woodall, Judge