IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2011

STATE OF TENNESSEE v. DEMETRUIS NACOYEA DUNN
a.k.a. NICK DUNN

Direct Appeal from the Circuit Court for Tipton County
No. 6321    Joseph H. Walker, Judge

No. W2010-00908-CCA-R3-CD - Filed June 3, 2011

The Defendant-Appellant, Demetrius Nacoyea Dunn, was convicted by a Tipton County jury of aggravated robbery, a Class B felony, and burglary, a Class E felony. He was sentenced as a Range I, standard offender to eight years for aggravated robbery and one year for burglary.[1] On appeal, Dunn claims: (1) his convictions were not supported by sufficient evidence; and (2) the trial court erred by failing to issue a curative instruction following hearsay testimony. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Clifford K. McGown, Jr. (on appeal), Waverly, Tennessee; Gary Antrican, District Public Defender; and Park Dickson, Assistant Public Defender (at trial), Somerville, Tennessee, for the Defendant-Appellant, Demetrius Nacoyea Dunn (a.k.a. Nick Dunn).

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; and D. Michael Dunavant, District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Trial.** In the late evening of November 11, 2008, Aldon Sutton, the victim, was robbed of his marijuana and his wallet, which contained two dollars and various other

---

[1]The judgment forms do not state whether the sentences were to be served consecutively or concurrently. The transcript from the sentencing hearing is not included in the record.

identifying documents. The victim testified that earlier that day, Terrell Payne, a co-defendant in this case, had entered his place of employment, a local convenience store, and asked the victim, "Where's the bud at?" The victim knew that Payne, his former classmate, was referring to marijuana because he "[r]eeked" of it. Although the victim told Payne that he had a small amount of marijuana in his truck, the victim was unwilling to sell it. Payne then asked the victim "what he had been up to," "where he lived," and "what type of car he drove." The victim thought Payne was "trying to catch-up" and he provided him with the requested information.

When the victim drove home, he noticed a Chevrolet Impala (the Impala) pull behind his truck (the truck).[2] The victim explained that the Impala drove closely behind him, passed his truck, and ultimately stopped in front of his truck. The victim stated, "I was just kind of confused about what was going on." Although the victim stopped his truck, he did not shift the gear to park. At this point, the victim stated "Terrell Payne came to my window and held the gun, told me to get the f–k out of the car[.]" The victim exited the truck, which then rolled forward and hit the back of the Impala. Payne, dressed in black clothes and a mask, repeatedly demanded that the victim exit the truck. Even though the victim could not see Payne's face, the victim recognized Payne's voice, demeanor, and body type.

As the victim was being forced to a field by Payne, the victim observed two other individuals get out of the Impala. The victim observed that "one of them was ransacking the car looking for something, and the other one put it in park." Payne ordered the victim to give him "what I got," and the victim complied by throwing Payne his wallet. While Payne retrieved the wallet, the victim ran away into tall grass. The victim testified that he also had an iPhone, valued at approximately $250, inside of his truck. He did not give anyone permission to take the iPhone, and he never obtained it after his encounter with Payne and the other two individuals.

The victim observed his assailants from the tall grass, and when he believed they had left, he returned to the area in an attempt to get help. The victim unwittingly flagged down his perpetrator's car, and Payne and another masked individual chased after him. The victim fell and Payne, armed with a gun, said, "Where's the dope?" The other unarmed individual said, "We'll shoot you dead." The victim pulled a quarter of an ounce of marijuana from his shoe and threw it at them. One of the assailants retrieved the marijuana, and they eventually left. Although the victim was vehemently cross-examined as to whether one or two

_____

[2]The victim was not the actual owner of the truck. The owner, Barry Stowell, testified that the victim had permission to drive the truck and that neither of the defendants had permission to enter his truck on the night of the offense.

-2-

individuals chased him down during the second encounter, he maintained that two individuals were involved in the second encounter.

After returning home, the victim contacted the police. The victim acknowledged that he failed to mention the marijuana involved in the second encounter in his first written statement to law enforcement. He included the marijuana in his second statement, which was provided to law enforcement the next day. The victim further acknowledged that he did not know Dunn and could not identify him as one of the perpetrators of the instant offense.

Arscenio Morgan testified that on the night of the offense, Payne, a friend, called and asked Morgan for a favor. Payne wanted Morgan to give him a ride to pick up some marijuana. When Morgan went to Payne's residence, he noticed that Payne's cousin, Dunn, was also there. Morgan acknowledged that he drove Dunn and Payne in his father's Impala to get the marijuana. Morgan testified that Dunn's purpose was "just to ride." While in the Impala, there was no discussion of a robbery. Morgan then explained that Payne directed them to the victim's place of employment, identified the victim's truck, and waited for the business to close.

In large part, Morgan corroborated the victim's account of how the Impala followed the victim's truck and ultimately collided with it. Morgan testified that Payne exited the Impala to "get [the marijuana]." When Payne approached the victim's truck, the victim "jumped out hollering . . . [and] just took off [running]." Morgan explained

> When he got out, when he took off running, his car was still in drive. And when his car was still in drive, it bumped into mine, and that's when I turned my music down and put my car in park. I told [Dunn] to get out and to go reverse it, you know, put it into park because its bumping against mine. And he got out an put it in park.

Morgan maintained that by the time he and Dunn exited the Impala to check for damage, the victim had already run off. He further testified that Payne

> [W]as trying to take [the marijuana] from the guy. He was trying to . . . rob him, take it. Obviously he didn't want to pay for [the marijuana], so he just wanted to take it.

Morgan observed Payne chase the victim into the woods. Although Morgan did not initially observe a gun, upon Payne's return to the Impala, Morgan said Payne had a "9 millimeter" or a "toy gun." Morgan testified that Dunn "said he got the wallet . . . and the phone" and threw them out of the window. Morgan stated that Payne and Dunn were

"giggling" based on the victim's reaction. Morgan further confirmed that they returned to the offense location a second time because Payne had dropped his phone. Under strenuous cross-examination, however, Morgan insisted that only Payne exited the Impala.

Payne was taken to the Tipton County Correctional Facility at 3:15 a.m. the morning after the offense. Officer Daniel Hull, a corrections officer, conducted a "pat search" of Payne and found "a clear plastic bag with [a] green leafy substance." Officer Hull said the leafy substance, which was the size of a golf ball, appeared to be marijuana.

Detective Chris Williams of the Tipton County Sheriff's Office testified that he was the lead investigator for this case. He was informed that the victim identified Payne at the scene of the offense. Detective Williams spoke with Payne on the morning after the robbery. Payne denied knowing anything about the robbery and claimed that he was at home with Dunn. Based on this information, Detective Williams spoke with Dunn who denied that he was with Payne on the night of the robbery.

Detective Williams said he tried to ascertain the location of the victim's phone. He determined that "the last pickup" was at 9:01 on November 12, 2008. Detective Williams stated that the call "pinged off a tower" within half-a-mile of Dunn's residence. Detective Williams testified about the Property Receipt and Release Form from the sheriff's office. It listed the clothes worn by Payne when he was arrested. Detective Williams said the items included a black hooded jacket, a dark bandana, and a nylon skull cap. Detective Williams acknowledged that there was no physical evidence that Dunn rode in the Impala.

Detective Williams spoke to Payne's mother soon after Payne was taken into custody. She informed Detective Williams that she had made some phones calls and that "it was Nick Dunn, Terrell Payne, and Arscenio Morgan, in Arscenio's car." Payne's mother testified and conceded that she had no personal knowledge of this case. She denied telling the officer that Payne, Dunn, and Morgan were in the car together on November 11, 2008.

Detective Williams was called as a rebuttal witness. He produced a document that he referred to as a case file sheet note. It provided confirmation that he spoke with Payne's mother regarding who was in the car on the night of the offense.

Following the proof at trial, Dunn was convicted of aggravated robbery and burglary. He filed a motion for new trial, which was denied. Dunn filed a timely notice of appeal.

**ANALYSIS**

**I. Sufficiency of the Evidence**. Dunn claims the evidence did not support his convictions for aggravated robbery and burglary. He asserts that no physical evidence linked him to the offenses. Dunn also points out that the victim was unable to identify him as one of the perpetrators. In response, the State argues that the evidence was sufficient for both convictions. It contends Morgan's testimony established that Dunn was an "active participant" in the robbery and the burglary.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). Recently, the Tennessee Supreme Court adopted the United States Supreme Court standard that direct and circumstantial evidence should be treated the same when reviewing the sufficiency of the evidence. See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Finally, the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. Odom, 928 S.W.2d at 23.

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Dunn was convicted of aggravated robbery and burglary. Aggravated robbery is defined as a robbery "accomplished with a deadly weapon or by any article used or fashioned to lead the victim to believe it to be a deadly weapon." T.C.A. §§ 39-13-401 & 39-13-402(a).

"A person commits burglary who, without the effective consent of the property owner, enters any . . . automobile, with intent to commit a felony [or] theft[.]" T.C.A. § 39-14-402(a)(4) (2008).

At trial, the victim testified that two men, Payne, armed with a gun, and another unarmed unidentified black male robbed him of his marijuana during their second encounter. In order to establish Dunn's guilt, the State was required to show, under a theory of criminal responsibility, that Dunn acted to promote or assist Payne in the commission of a robbery. T.C.A. § 39-11-402(2) (2008); see also State v. Carson, 950 S.W.2d 951, 955 (Tenn. 1997) (noting that criminal responsibility is intended to embrace the common law principles governing aiders and abettors and accessories before the fact and that a defendant must knowingly, voluntarily, and with common intent unite with the principal offenders in the commission of the crime (internal citations omitted)).

Here, although Morgan placed Dunn at the scene of the offense, he stopped short of stating that Dunn participated in the robbery. We further acknowledge that Dunn exited the Impala only after the victim had "took off running" and then returned to the Impala after putting the victim's truck in park. However, viewing the proof in the light most favorable to the State, as we must, Morgan testified that there were only two other people in the Impala that night, Payne and Dunn. Morgan fully denied any involvement in the offense, and Payne was identified by the victim. Although there was some dispute as to how many men were involved in the second encounter, the jury resolved this inconsistency against Dunn. The victim's account of a second perpetrator who demanded the drugs and stated, "We'll shoot you dead," combined with Dunn's possession of the victim's phone and wallet immediately following the robbery create a reasonable inference for a jury to conclude that Dunn promoted or assisted Payne in committing the aggravated robbery. We therefore conclude that sufficient evidence supports Dunn's aggravated robbery conviction. Dunn is not entitled to relief on this issue.

In regard to the burglary conviction, the victim claimed that while backing away from the road, he saw two masked men go through his truck. He said his phone was inside of his truck prior to the offense, and after the perpetrators drove away, it was gone. After recognizing that Payne had just robbed the victim, Morgan observed Dunn return to the car, giggle, and claim that he had a wallet and a phone. Based on the foregoing evidence, a reasonable jury could have found Dunn guilty of burglary. Dunn is not entitled to relief.

**II. Curative Instruction**. Dunn claims the trial court should have issued a curative instruction about hearsay testimony. He argues that the curative instruction should have been given after defense counsel objected to testimony from Detective Williams. Detective Williams testified that he spoke to Payne's mother soon after Payne was taken into custody.

According to Detective Williams, Payne's mother stated that "it was Nick Dunn, Terrell Payne, and Arscenio Morgan, in Arscenio's car." Dunn contends the trial court needed to make a ruling on this issue and provide a curative instruction. In response, the State claims this issue is waived because defense counsel failed to state the basis of the objection at trial and failed to pursue a ruling from the trial court. The State also asserts that Dunn provided no legal support for his claim on appeal.

This issue is waived on several grounds. First, Dunn has failed to support his position by legal authority. Rule 10(b) of the Rules of the Court of Criminal Appeals states, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." See also T.R.A.P. 27(a)(7). Dunn's brief contains no argument regarding the hearsay issue and further fails to specify how Dunn was prejudiced by the admission of the testimony. The failure to comply with Rule 10(b) results in a waiver of this issue. See State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

We conclude Dunn has further waived this issue based on our review of the record. Here, the record shows the following exchange between the co-defendant's counsel and Detective Williams:

COUNSEL: You didn't do anything?

WITNESS: Oh, I did a lot, but I didn't do fingerprints or DNA.

COUNSEL: [I]n terms of placing them actually in the vehicle, other than just

verbal statements.

WITNESS: . . . Terrell Payne's mom told me they were in the car.

COUNSEL: That's not what I asked you. . .

WITNESS: You asked me how else I could put Terrell Payne and Nick Dunn

in the car. When I spoke to Terrell's mother, the day after at 7:13 in the

morning, she told me that it was Terrell, Nick Dunn, and Arscenio Morgan in

Arscenio's car.

COUNSEL: Well-

At this point, Dunn's counsel objected and moved to strike Detective William's testimony. However, he did not state his grounds for the objection or request a ruling from the trial court. <u>See</u> Tenn. R. Evid. 103(a)(1) (providing that timely objection for purposes of preserving the issue for appeal must state "the specific ground of objection if the specific ground was not apparent from the context"). Instead, Dunn's counsel was silent while Payne's counsel continued to cross-examine the witness on the same issue for at least seven additional questions. Payne's counsel was clearly attempting to impeach the above witness as evidenced by presenting contrary testimony from Payne's mother. Dunn cannot complain of error on appeal that he had the opportunity to address before the trial court. <u>Hill v. State</u>, 513 S.W.2d 142, 143 (Tenn. Crim. App.1974) (stating that to allow evidentiary questions to be raised at anytime would "undercut the very function of the trial process, for it would become a tactical matter of defense to allow a bit of constitutionally inadmissable evidence into the record, in the hope for an acquittal but secure in the knowledge that a new trial would result"). Finally, we decline plain error review of this issue because it does not rise to the level of affecting a substantial right that would necessitate review in order to do substantial justice. <u>See</u> T.R.A.P. 36 (b). Dunn is not entitled to relief.

**CONCLUSION**

Based on the foregoing, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

-8-