IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 21, 2016 Session

## STATE OF TENNESSEE v. JAVONTA MARQUIS PERKINS

**Appeal from the Criminal Court for Davidson County**
**No. 2012-C-2144     J. Randall Wyatt, Jr., Judge**
_____

**No. M2015-01025-CCA-R3-CD – November 7, 2016**
_____

This is Defendant's, Javonta Marquis Perkins, direct appeal from his conviction of evading arrest, a Class D felony. On appeal, he argues that the evidence is insufficient to support his conviction and that the trial court erred by giving a jury instruction on criminal responsibility. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined. NORMA MCGEE OGLE, J., concurring in part and dissenting in part.

Richard C. Strong, Nashville, Tennessee, for the appellant, Javonta Marquis Perkins.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General, Senior Counsel; Glenn R. Funk, District Attorney General; and Mindy Morris and Jude Santana, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

*Procedural History and Factual Summary*

On August 6, 2012, the Davidson County Grand Jury indicted Defendant on one count of aggravated robbery, one count of carjacking, one count of aggravated assault, one count of evading arrest, and one count of possession of a weapon during the commission of a dangerous felony.

At trial, the proof showed that, on March 3, 2012, between 1:30 a.m. and 2:00 a.m., Maurice Hegwood went to his parents' home to deliver medicine to his mother. As

Mr. Hegwood exited his vehicle, two men approached him. One of the men pointed a gun at Mr. Hegwood's head and ordered Mr. Hegwood onto the ground. The gunman took the keys to Mr. Hegwood's newly-purchased white 2009 Pontiac G-6 and handed them to the other man. The other man then attempted to reverse the Pontiac out of the driveway and into the road; however, he hit the house twice, damaging both the vehicle and the home. Mr. Hegwood heard the gunman accuse the other man of not knowing how to drive and demand that the other man "get out of the car." The gunman then commandeered the driver's seat, and the men drove away.

At trial, Mr. Hegwood identified Defendant as the gunman. Mr. Hegwood testified that the home had motion-censor lights located on the porch near the garage and that the driveway was well-lit during the altercation. Mr. Hegwood was able to see the gunman's face while he was on the ground.

Between 2:00 a.m. and 2:30 a.m. of the same night, two men approached Edward Crowder as he exited his vehicle in the driveway of his home, located only a few miles away from the Hegwood residence. Mr. Crowder heard "a couple of car doors closing" and saw a "light-colored" vehicle which was "running as though the muffler had damage to it or something was wrong with it." As Mr. Crowder walked along his driveway, two men approached him while pulling hoods over their heads. The two men moved quickly toward Mr. Crowder. Feeling threatened, Mr. Crowder produced a firearm from his right pocket. One of the men walked into Mr. Crowder's yard and pulled a gun from his pants. In response, Mr. Crowder retrieved another firearm with his left hand and turned around to confront the gunman. As soon as Mr. Crowder displayed the two firearms, both men ran back to the vehicle and sped away.

Mr. Crowder was unable to identify either man because their hoods covered their faces and because they never came closer than "fifteen to twenty feet." However, Mr. Crowder testified that the gunman appeared taller than the other man.

Officer Nicholas Carter of the Metro Police Department responded to the Hegwood residence and observed that the driveway had "enough ambient light to where [he] did not use a flashlight" to illuminate his notepad while taking notes. Mr. Hegwood told Officer Carter that he would be able to identify the gunman but not the other man. Mr. Hegwood was, however, able to describe the race, gender, height, and clothing of each perpetrator. Mr. Hegwood told Officer Carter that the gunman was the taller of the two men.

While interviewing Mr. Hegwood, Officer Carter was notified that two black male suspects in "a white or light-colored vehicle had . . . attempted to commit another robbery close by." At approximately 2:55 a.m., while driving an unmarked vehicle, Officer Carter spotted a white 2009 Pontiac G-6 driving towards him on Trinity Lane. Officer

Carter pointed his spotlight at the license plate and saw two individuals in the vehicle. Officer Carter verified that the vehicle belonged to Mr. Hegwood, made a radio report that he had located the stolen vehicle, and continued following it. Anticipating that the men in the Pontiac may have been armed, Officer Carter waited for assistance before activating his sirens. Officer Steven Spillers of the Metro Police Department, in a marked vehicle, took the lead behind the Pontiac, and the two officers initiated their lights and sirens together. The Pontiac came to a complete stop at a stop sign on Old Matthews Road then made a sudden right turn onto Trinity Lane and accelerated westbound.

At this time, Sergeant Corey Sanderson of the Metro Nashville Police Department was travelling eastbound on Trinity Lane in response to the radio report and saw the accelerating Pontiac. As Sergeant Sanderson approached, the Pontiac entered into his lane of traffic while travelling at a high rate of speed. Sergeant Sanderson swerved to his right to avoid a head-on collision. Sergeant Sanderson saw two occupants in the front seats of the vehicle.

The Pontiac attempted to make a left turn onto Baptist World Center Drive. However, due to its high speed, the vehicle drove over a curb, hit a "pretty substantial dip" in the pavement of a parking lot, and then traveled airborne into a wooded area at the intersection of Baptist World Center Drive and Youngs Lane. Two men exited the wrecked vehicle and ran into the woods. When more units arrived at the scene, the officers created a perimeter around the wooded area. Eventually, a K-9 unit apprehended Defendant and Quentin McClain.

The jury found Defendant guilty of evading arrest with a motor vehicle and not guilty of aggravated assault. The jury was unable to reach a verdict on the remaining charges, and the trial court declared a mistrial on those charges. The trial court sentenced Defendant to serve four years as a Range I offender for his evading arrest conviction. Because the trial court found that Defendant placed a third party in imminent danger during the commission of the offense, the offense was classified as a Class D felony pursuant to Tennessee Code Annotated section 39-16-603(b)(3).

*Analysis*

Defendant raises two issues on appeal. First, Defendant contends that the State produced insufficient evidence to sustain a conviction for felony evading arrest. Specifically, Defendant argues that the State failed to prove that during the evasion, Defendant was the driver of the vehicle and that Defendant placed an innocent bystander or third party in imminent danger of death or serious bodily injury. Second, Defendant argues that the trial court erred by charging the jury under the theory of criminal responsibility. We choose to address the second issue first.

*A. Jury Instruction*

It is well-recognized that a defendant in a criminal case "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *see State v. Leath*, 461 S.W.3d 73, 105 (Tenn. Crim. App. 2013). When reviewing jury instructions on appeal to determine whether they are erroneous, this Court must "review the charge in its entirety and read it as a whole." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). A jury instruction is considered "prejudicially erroneous" only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id*. Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

Defendant does not argue that the instruction on criminal responsibility was inaccurate. Instead, he argues that the instruction was erroneously charged because it was not fairly raised by the proof presented at trial. We disagree.

A trial court may commit error by instructing a jury on the theory of criminal responsibility where the evidence presented does not support such a theory of guilt. *See State v. Hatcher*, 310 S.W.3d 788, 811 (Tenn. 2010). Tennessee Code Annotated section 39-11-402(2) provides that a person is "criminally responsible for an offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." In *State v. Dickson*, our supreme court explained:

> Criminal responsibility is not a separate crime, but "a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999). Criminal responsibility represents a legislative codification of the common law theories of aiding and abetting and accessories before the fact. *Id.* at 171 (citing *State v. Carson*, 950 S.W.2d 951, 955 (Tenn. 1997)). "No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible." *State v. Caldwell*, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002).

413 S.W.3d 735, 744 (Tenn. 2013). Accordingly, "defendants convicted under a theory of criminal responsibility are considered to be principal offenders, just as if they had

committed the crime themselves." *State v. Sherman*, 266 S.W.3d 395, 408 (Tenn. 2008) (citing *Carson*, 950 S.W.2d at 954).

Criminal responsibility was fairly raised by the proof in this case. The evidence showed that two men acted in concert to steal a car. The car's owner identified Defendant as one of the carjackers. When police officers located the stolen vehicle and signaled for it to stop, the car failed to comply and engaged in evasive maneuvers. As the car fled, police officers observed two occupants inside the vehicle. When the car eventually came to a stop, two men were observed fleeing the stalled vehicle on foot. With the assistance of a canine unit, Defendant was discovered hiding in the vicinity of the stolen vehicle. Although the police officers involved in the chase could not identify the driver of the vehicle, the evidence presented was sufficient for a rational jury to infer that Defendant was one of the occupants of the vehicle and that he acted with the intent to promote or benefit from the vehicle's failure to yield to police. The trial court did not err by instructing the jury on criminal responsibility under the circumstances of this case. Defendant is not entitled to relief on this issue.

## B. Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Tennessee Code Annotated section 39-16-603(b)(1) provides that "[i]t is unlawful for any person, while operating a motor vehicle on any street, road, alley, or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." The offense is considered a Class D felony if the flight "creates a risk of death or injury to innocent bystanders or other third parties." T.C.A. § 39-16-603(b)(3)(B).

Defendant asserts that the evidence is insufficient to support his conviction because the State did not introduce evidence that Defendant was the driver of the vehicle at the time of the evasion. Specifically, Defendant argues that, because almost two hours elapsed after Mr. Hegwood witnessed Defendant enter the driver's seat, there was ample time for the perpetrators to switch drivers. Under this reasoning, Defendant argues that because no officer identified the driver at the time of the evasion, there was insufficient evidence to prove beyond a reasonable doubt that he was actually the driver of the vehicle during the evasion. However, this argument fails because the State was not required to prove that Defendant was actually the driver. As discussed above, a rational jury could have found Defendant guilty of evading arrest under a theory of criminal responsibility. While not a separate crime, criminal responsibility is a theory by which the State may alternatively establish guilt based on the conduct of another. *Dorantes*, at 386 (citing *Lemacks*, 996 S.W.2d at 170). In order to be convicted, "the evidence must establish that the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission." *Id.* (citing *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994); *State v. Foster*, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)). No specific act or deed needs to be demonstrated by the State, and the presence and companionship of an accused with the offender before and after the offense are circumstances from which participation in the crime may be inferred. *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998).

The owner of the stolen vehicle identified Defendant as one of the men who stole the vehicle. The two occupants of the stolen vehicle failed to comply with signals to stop and actively eluded police pursuit. The two occupants of the stolen vehicle then continued to elude police even after wrecking the vehicle. Defendant was found concealed in the vicinity of the stolen vehicle after being tracked from its location by a canine unit. The fact that the State primarily relied on the theory that Defendant was the driver of the stolen vehicle, rather than the passenger, is immaterial. In this regard, the evidence was sufficient to support Defendant's conviction.

Defendant also contends that there was no evidence that the evasion placed innocent bystanders or third parties under threat of death or injury and that, therefore, the Class D felony sentence was erroneous. Defendant argues that he, his accomplice, or any of the pursuing officers cannot be considered "innocent bystanders or third parties" to permit a Class D conviction. The State, however, asserts that Sergeant Sanderson was

the "third party" placed in danger of death or bodily injury during the evasion. Our supreme court has stated that innocent bystanders or third parties are considered "persons other than the defendant him or herself and the officer giving the signal to stop." *State v. Cross*, 362 S.W.3d 512, 521 (Tenn. 2012). The record clearly establishes that Sergeant Sanderson was not one of the officers who signaled the initial stop of the stolen vehicle.[1] After Officers Spillers and Carter gave the initial signals to stop and began pursuing the stolen vehicle, Sergeant Sanderson approached the reported location of the stolen vehicle to provide assistance if required. While traveling in the opposite direction of the stolen vehicle, Sergeant Sanderson narrowly avoided a head-on collision with the stolen vehicle when it swerved into his lane. We agree with the State that a law enforcement officer who did not initiate the stop can be considered an endangered third party to give rise to a Class D felony evading arrest conviction.[2] Because there was evidence that Defendant's evasion of arrest created a risk of death or injury to a third party, the Class D felony conviction was proper. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, Defendant is not entitled to relief, and we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE

---

[1] The record is unclear as to whether Sergeant Sanderson's blue lights were activated when the encounter occurred with the stolen vehicle.

[2] We note that, after the incident in this case occurred, the General Assembly amended the evading arrest statute such that, "[i]f the flight or attempt to elude creates a risk of death or injury to innocent bystanders, *pursuing law enforcement officers*, or other third parties, a violation of this subsection (b) is a Class D felony . . . ." T.C.A. § 39-16-603(b)(3)(B) (emphasis added).